makes no objection to the salvage, and a very large allowance, viz. forty-five per cent is made, and acquiesced in by him, without objection or appeal. How has it happened, that not a human being ever saw the box of coin after it was first put into the run—or ever was called upon by Captain Hall, to attend to its safety—until the very hour when the wreckers came on board? I am sorry to be obliged to come to the conclusion, that a more aggravated case of gross negligence, under circumstances of so little urgency and peril, never came before this court. I do not dwell upon other considerations of a more intricate character, nor upon some portions of the evidence which might lead to a more harsh conclusion. My judgment is, that the owners are responsible for the loss of the box of gold, and that no facts have been shown, that establish the loss to have been by the perils of the seas. Under such circumstances the libellants ask to have the value of the gold coin (the sovereigns) allowed them as if they had arrived at Mobile. I do not know, that there is any difference between the value there and at Key West. But as they were not carried to Mobile, and might never have arrived there, the true test is the value at Key West, with interest upon the value from the time when proceedings for salvage were instituted at Key West. I adopt that date, as allowing full time for Capt. Hall, if he had exercised reasonable diligence, to have ascertained all the facts—or at least, all which were within the reach of an interested and vigilant master and owner. The decree of the district court is, therefore, reversed, and a decree for damages and interest, according to the rule above suggested, is to be entered for the libellants with costs.

---

KING, (SHERBURNE v.). See Case No. 12,-759.

---

## Case No. 7,805.

### KING v. SIMM.

[2 Cranch, C. C. 234.][1]

Circuit Court, District of Columbia. April Term, 1821.

INSOLVENCY — DISCHARGE OF PRINCIPAL UNDER STATE LAW—EXONERATION OF BAIL.

If the principal be discharged under the insolvent law of one of the states after the judgment against him in this court, and the motion to discharge the bail be made at the return term of the scire facias against the bail, the court will discharge him, upon payment of the costs of the scire facias.

[Cited in Channing v. Reiley, Case No. 2,596.]

The scire facias against Thomas Simm, special bail of Richard H. Love, was returned at December term, 1820, at which term

the motion was made to exonerate the bail, on the ground that the principal has been discharged under the insolvent law of Virginia, since the judgment rendered against him in this court.

Mr. Turner, for plaintiff [C. B. King], cited the following cases in this court, viz.: Boyer v. Herty [Case No. 1,753] in July, 1805; Byrne v. Carpenter [Id. 2.271] June term, 1808; Bussard v. Warner [Id. 2,229] at June term, 1815. And also Woolley v. Cobbe, 1 Burrows, 244; Cockerill v. Owston, Id. 436; Har. Ent. Plea of Insolvency of the Principal; 1 Saund. 2, 61; Walker v. Giblett, 2 W. Bl. 811; Donnelly v. Dunn, 1 Bos. & P. 448; 2 Bos. & P. 45; Martin v. O'Hara, Cowp. 823; Southcote v. Braithwaite, 1 Term R. 624.

Mr. Randall, for defendant.

THE COURT (nem. con.) ordered the exoneretur to be entered, on payment of the costs of the scire facias. The court at a former term had decided the same point in the case of Robert Bayley [unreported].

---

KING (SMALL v.). See Case No. 12,960.

---

## Case No. 7,806.

### KING et al. v. SMITH.

[4 Chi. Leg. News, 281; 7 Am. Law Rev. 178.][1]

Circuit Court, D. New Jersey. March 27, 1872.

CONSTRUCTION OF REVENUE LAWS—WHAT CONSTITUTES A MANUFACTURED ARTICLE — THE TERM "MANUFACTURED" DEFINED, AND THE DEFINITION APPLIED TO CORKS AND CORK WOOD.

[Manufactured cork means such fabric produced from the raw material or the rough cork as is adapted to use and suitable for sale in the market as such, and unmanufactured cork is cork in such a condition as not to be adapted to such use and sale. Cork squares or quarters fall within the latter class.]

These were two suits brought against the defendant [C. McKnight Smith], the collector of customs at Perth Amboy, N. J., to recover duties paid under protest by the plaintiffs [William King and others], upon importations by them from Seville, Spain, of articles known as "cork squares" or "cork quarters." Under the tariff of 1864 [13 Stat. 202], "cork wood or cork bark, unmanufactured," was dutiable at thirty per cent. ad valorem, while "cork wood or cork bark, manufactured," was dutiable at fifty per cent. ad valorem. While that tariff was in force, importations such as those in question were charged by the collector at Perth Amboy and New York with duties at the rate of only thirty per cent. By the tariff act of 1870 [16 Stat. 256], "cork wood or cork bark unmanufactured," was put on the free list, and thereupon the collector at Perth Amboy and New York, by direction of the treasury department, exacted duties on such im-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [7 Am. Law Rev. 178, contains only a partial report.]